UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT MASON,

        Petitioner,

v.                                        CASE NO. 04-CV-60189-AA
                                         HONORABLE MARIANNE O. BATTANI

KENNETH MCKEE,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I.    Introduction**

Petitioner Lamont Mason, a Michigan prisoner, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of armed robbery, felon in possession of a firearm ("felon in possession"), and possession of a firearm during the commission of a felony ("felony firearm") following a jury trial in the Wayne County Circuit Court in 2001. He was sentenced as a third habitual offender and third felony firearm offender to concurrent terms of 10-20 years imprisonment and 3-10 years imprisonment and a consecutive term of 10 years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the denial of severance, double jeopardy, the jury instructions, the transcripts, and the effectiveness of trial counsel. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

## II.     Relevant Facts and Procedural History

Petitioner's convictions arise from his armed robbery of Durresi's Restaurant in Redford Township on August 4, 2000. Petitioner was charged with armed robbery, felon in possession of a firearm, and felony firearm. Petitioner was tried with co-defendant Khalila Hammond, who was charged with armed robbery, felony firearm, carrying a concealed weapon, and accessory after the fact.

During jury voir dire, co-defendant's counsel inquired whether the jurors would find someone guilty just because, theoretically speaking, that person was involved with an evil person. The judge cautioned the jurors that each defendant's case had to be judged separately. During the voir dire, Petitioner moved for severance based upon the co-defendants voir dire. The trial court denied the motion finding that counsel was careful not to imply that Petitioner was an evil person.

At trial, Jessica Anderson testified that she was waiting tables at Durresi's Restaurant during the early morning hours on August 4, 2000 when a man entered and placed an order. He then put menu over his hand, covering a gun with the barrel showing, and demanded all the money from the cash register. Anderson gave him the money, which she thought was between $400 and $600, in ones, fives, tens, and twenties. When the robber left, Anderson called 911. The 911 tape was admitted into evidence and played for the jury, but not transcribed. Anderson described the robber as a black male, late 20s or early 30s with a thin mustache, wearing a dark blue or black jogging suit, and a white baseball cap. She did not notice a facial scar. She described the weapon as a silver or black steel revolver. Anderson subsequently identified Petitioner as the robber at a line-up, the preliminary examination, and trial.

Richard Thomas, a customer, testified that he witnessed the robbery. He placed an order

and noticed that the waitress was busy with a man, whom he later identified as Petitioner. Thomas heard the man say that he had a gun and demand money. He looked over and saw something black on the counter covered by a menu. He then observed the waitress give the man money from the register. Thomas described the man as a brown-skinned bald man with a mustache and a hat, but did not notice a facial scar. Thomas further testified that he saw a brown Chevrolet Caprice Classic parked on a side street near the restaurant with a young black woman in the passenger seat. He thought this was odd since one would normally park in the parking lot. Thomas provided this information to police investigating the robbery. He later identified Petitioner as the robber during a line-up.

Police Officer Kennedy testified that he arrived at the scene within minutes and broadcast the relevant descriptions over the radio. Police Officer Brian Jones testified that he heard the broadcast and observed a late model brown Chevrolet Caprice at a gas station near the crime scene. The driver was a bald black male with a mustache. Petitioner and his co-defendant were stopped and arrested. The police found a black semi-automatic handgun in the co-defendant's purse and money totaling $584.00 in twenties, tens, fives, and ones. The police also found clothing, consistent with the witnesses' descriptions of the robber, in the trunk and back seat of the car. Police Investigator James Turner confirmed that Anderson and Thomas positively identified Petitioner as the robber during a line-up. Turner also testified that he took Petitioner's videotaped statement, which was played for the jury but not transcribed.

The parties stipulated that Petitioner had a prior felony conviction.

When the prosecution rested, the trial court granted a directed verdict of not guilty on the armed robbery charge against the co-defendant.

Investigator Sunny Miller testified that Richard Thomas indicated that the car in the

police photographs was not the car he saw on the night of the robbery.

Petitioner testified in his own defense at trial. He denied committing the robbery and testified about what he did that evening. He said that he was with the co-defendant all day and explained that they had left his mother's house to get gas on the way to a motel near Oakland Mall when he was arrested by police. He testified that he drove a late model Chevrolet Impala, similar to a Caprice. Petitioner admitted that he hid a gun in the co-defendant's purse. He claimed that he made the money found in the co-defendant's purse by fighting pit bulls. Petitioner testified that he was wearing light blue gym shorts and a dark t-shirt when arrested and that he kept other clothing in his car because he used a laundromat to clean his clothing. Petitioner said that he asked the police to take him to the restaurant for an on-scene identification, but they refused.

Co-defendant Khalila Hammond testified in her own defense. She testified that she was the 24-year-old mother of four young children and that she was pregnant on the night of the robbery. She testified that she was sitting in brown Chevy on a side street near Durresi's restaurant on August 4, 2000, but did not go into the restaurant. She and Petitioner had driven to Belle Isle and she had fallen asleep on the way home. She woke up when Petitioner shut the car door and told her that he would be right back. Petitioner was gone for five to eight minutes. When he returned, he did not have a gun or money. They did not discuss a robbery or her holding a gun for him. She also testified that Petitioner wore light blue shorts and a blue t-shirt and denied seeing him wearing a jacket. She said that Petitioner did not give her any money that night. She did not know if Petitioner had placed a gun or money in her purse while she was retrieving snacks from the back seat. She said that she would not hold a gun or hide money to protect Petitioner. She confirmed that Petitioner fought pit bulls, but said there was no plan to

4

get a motel room near Oakland Mall.

At the close of trial, the jury found Petitioner guilty of armed robbery, felon in possession, and felony firearm. The jury found the co-defendant guilty of carrying a concealed weapon, but not guilty of the remaining charges.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims contained in the instant petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Mason*, No. 234900, 2003 WL 327992 (Mich. App. Feb. 11, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Mason*, 469 Mich. 903, 669 N.W.2d 816 (2003).

Petitioner, through counsel, thereafter filed the present petition for writ of habeas corpus asserting the following claims:

    I.      Petitioner was prejudiced by the wrongful refusal to grant a separate trial from the co-defendant.

    II.     Petitioner was denied due process and the protection against double jeopardy by instructions that allowed him to be convicted of felony firearm in the course of felon in possession of a firearm.

    III.    Petitioner was denied due process by instructions that discouraged use by the jury of statements he did not make, but did no prohibit it.

    IV.    Petitioner was denied due process and the constitutional right of appeal by the court reporter's action in making an incomplete transcript.

    V.     Petitioner was prejudiced by ineffective assistance of counsel.

Respondent has filed an answer to the petition contending that the jury instruction claim should be denied based upon procedural default and the remaining claims should be denied for lack of merit. Petitioner has filed a reply to that answer.

**III.   Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must

6

have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

    A.    <u>Severance Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in denying a request to sever his case from that of co-defendant Khalila Hammond. Respondent contends that this claim lacks merit and does not warrant habeas relief.

The issue of severance is governed by state law. *See Hutchison v. Bell*, 303 F.3d 720,

7

731 (6th Cir. 2002).  The United States Court of Appeals for the Sixth Circuit has recently indicated that a severance claim cannot provide a basis for habeas relief because the United States Supreme Court has never clearly established a federal right to proper severance.  *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004).

Nonetheless, it is well-settled that a state law trial error does not warrant habeas relief unless the "error rises to the level of depriving the defendant of fundamental fairness in the trial process."  *See Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Courts favor the joinder of defendants charged with participating in the same act or series of acts because it is more efficient than conducting separate trials.  *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Gibbs*, 182 F.3d 408, 434 (6th Cir. 1999).  "Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant."  *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993).  "Mutually antagonistic defenses are not prejudicial per se."  *Zafiro,* 506 U.S. at 538.  When defendants are properly joined, courts should grant a severance "only if there is a serious risk that a joint trial would compromise specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Id*. at 539.  The mere fact that there is hostility among the defendants or that one defendant may try to save himself at the expense of another is not sufficient ground to require separate trials.  *See United States v. Pierce*, 62 F.3d 818, 830-31 (6th Cir. 1995); *Ringstaff v. Mintzes*, 539 F. Supp. 1124, 1131 (E.D. Mich. 1982).

Citing state law and *Zafiro, supra*, the Michigan Court of Appeals concluded that the trial court did not abuse its discretion by refusing to sever Petitioner's trial from that of his co-defendant because Petitioner failed to show that his substantial rights were prejudiced by the co-defendant's defense.  The court found that their defenses were not mutually exclusive,

8

antagonistic, or irreconcilable and that the co-defendant's testimony did not prevent a fair determination of the parties' guilt. *See Mason*, 2003 WL 327992 at *1.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision in this regard is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The defenses presented by Petitioner and his co-defendant were neither antagonistic nor mutually exclusive. While the co-defendant's testimony tended to place Petitioner near the scene of the robbery, she did not accuse Petitioner of the crime nor offer other testimony indicating his guilt. Furthermore, the prosecution presented significant evidence against Petitioner. He was stopped in the vicinity of the robbery driving a car and carrying money and a gun consistent with the robbery descriptions. Additionally, the victim and another eyewitness positively identified him in a lineup and at trial. Given such circumstances, Petitioner has not shown that the jury was prevented from making a reliable judgment about his guilt or innocence or that he was otherwise unconstitutionally prejudiced by the joint trial. Habeas relief is not warranted on this claim.

      B.      <u>Double Jeopardy Claim</u>

Petitioner next asserts that he is entitled to habeas relief because his convictions for felon in possession and felony firearm violate double jeopardy. Respondent contends that this claim lacks merit.

As an initial matter, the Court notes that Petitioner is not entitled to federal habeas relief on any claim that his convictions violate the Double Jeopardy Clause of the Michigan Constitution. In reviewing a habeas corpus petition, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v.*

9

*Jeffers*, 497 U.S. 764, 780 (1990).  Further, the Michigan courts have concluded that convictions for felon in possession and felony firearm arising out of the same incident do not violate the Double Jeopardy Clause of the Michigan Constitution.  *See People v. Calloway*, 469 Mich. 448, 449-50, 671 N.W.2d 733 (2003); *People v. Dillard*, 246 Mich. App. 163, 631 N.W.2d 755 (2001) (per curiam).  Such determinations are entitled to deference on habeas review as state courts are the final arbiters of state law.  *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  The Court will therefore proceed to the federal issue.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same

conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also Hunter*, 459 U.S. at 368.

> The statute at issue here is the felony firearm statute, which provides:
>
> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223 [unlawful sale of a firearm], section 227 [carrying a concealed weapon], 227a [unlawful possession of a firearm by a licensee] or 230 [alternation of identifying marks on a firearm], is guilty of a felony, and shall be imprisoned for 2 years.

MICH. COMP. LAWS § 750.227b(1). The Michigan Supreme Court, in light of the language of this section and the legislative history, has concluded that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *People v. Mitchell*, 456 Mich. 693, 698, 575 N.W.2d 283 (1998). In *People v. Calloway, supra*, 469 Mich. at 452, the Michigan Supreme Court followed *Mitchell* and specifically ruled that "[b]ecause the felon in possession charge is not one of the felony exceptions in the statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL § 750.224f, and

felony-firearm, MCL § 750.227b."

In this case, the Michigan Court of Appeals denied relief on the double jeopardy claim finding that the Michigan Legislature intended to make felon in possession and felony firearm separate crimes and intended the imposition of cumulative penalties. *See Mason*, 2003 WL 327992 at *2 (citing *Dillard, supra*).

Given the foregoing cases, the Michigan Court of Appeals' denial of relief in this case is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Whether punishments imposed are constitutional is essentially a question of legislative intent, and a state court's determination that a state legislature intended multiple punishments is binding on habeas corpus review. *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). The Michigan Supreme Court has concluded that convictions for both being a felon in possession of a firearm and possessing a firearm during the commission of a felony do not violate double jeopardy. Because this determination is binding on federal habeas review, Petitioner's double jeopardy claim lacks merit. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002).

Further, even if this Court were free, as it is not, to independently determine whether the Michigan legislature intended to authorize separate punishments in the circumstances present here, the result would be the same. As noted, the felony firearm statute, in plain language, states that it applies to all underlying felonies, with the exception of four explicitly delineated felonies. It is a well-established canon of statutory construction that the mention of some implies the exclusion of others not mentioned – *expressio unius est exclusio alterius*. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167 (1993). Because the felon in

possession charge is not one of the four explicitly enumerated exceptions to the felony-firearm statute, it is presumed that the Michigan legislature intended to impose multiple punishments in this context. Accordingly, the Court concludes that the Michigan legislature intended to impose multiple punishments in the circumstances present here such that Petitioner's convictions do not violate state or federal double jeopardy protections. Habeas relief is not warranted on this claim.

  C.  <u>Jury Instruction Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in instructing the jury. Specifically, Petitioner asserts that the trial court erroneously instructed the jury that if it found a statement purportedly made by Petitioner was not made by him, the jury *should not* consider it, instead of telling the jury that it *must not* consider it. Respondent contends that this claim is barred by procedural default and lacks merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).

The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing Petitioner's claim, the court relied upon a state procedural bar -- Petitioner's failure to object to the jury instructions at trial. *See Mason*, 2003 WL 327992 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

In this case, Petitioner neither alleges nor establishes cause to excuse his default. This

Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000) (Gadola, J.). Nonetheless, the Court notes that Petitioner cannot establish prejudice as this claim lacks merit for the reasons stated by the Michigan Court of Appeals. *See Mason*, 2003 WL 327992 at *2. Petitioner has not shown that his trial was rendered fundamentally unfair by the trial court's jury instructions. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence" means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

    D.    <u>Transcription Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the court reporter did not transcribe the content of the videotape which was played for the jury and because the court reporter did not transcribe the opening and closing statements made by co-defendant's counsel as part of Petitioner's record. Respondent contends that this claim lacks merit.

15

Due process requires that a defendant in a criminal case be provided with a transcript of a prior proceeding when that transcript is needed for an effective defense or appeal. *See, e.g., Britt v. North Carolina*, 404 U.S. 226, 227 (1971). However, a state prisoner seeking federal habeas must demonstrate prejudice due to a missing transcript before a constitutional violation of a right to a fair appeal will be found. *See Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986); *accord White v. Florida*, 939 F.2d 912, 914 (11th Cir. 1991); *Mitchell v. Wyrick*, 698 F.2d 940, 941-42 (8th Cir. 1983).

The Michigan Court of Appeals denied relief on this claim, finding that Petitioner had failed to demonstrate that he was prejudiced by the court reporter's failure to transcribe the videotape or the opening and closing statements of the co-defendant's counsel. *See Mason*, 2003 WL 327992 at *3.

The Michigan Court of Appeals' decision in this regard is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner cannot establish prejudice arising from the failure to transcribe the videotape that was played for the jury. The videotape was admitted into evidence as an exhibit and was available for review at the time of Petitioner's appellate proceedings. Petitioner has not shown, nor is there any indication in the record, that a transcript of the videotape was necessary for Petitioner to appeal his convictions. Second, Petitioner cannot establish prejudice arising from the failure to transcribe the opening and closing arguments of co-defendant's counsel. As noted by the Michigan Court of Appeals, appellate counsel had the opportunity to review the co-defendant's trial testimony and the remaining trial record during the course of preparing Petitioner's appeal. The arguments of counsel are not evidence, and the jury was so advised. Petitioner has not shown that transcripts of the opening and closing statements of co-

16

defendant's counsel were necessary for him to properly appeal his convictions. Presumably counsel's statements would be available in the co-defendant's records, but those statements have not been obtained or presented to this Court. Mere speculation that the statements of co-defendant's counsel were necessary for a fair appeal precludes a finding of a constitutional violation by this Court. *See Bransford*, 806 F.2d at 86. Habeas relief is not warranted on this claim.

  E. Ineffective Assistance of Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request an alibi instruction at trial. Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

17

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Applying the *Strickland* standard, the Michigan Court of Appeals found that Petitioner had failed to show that trial counsel's performance fell below an objective standard of reasonableness and that Petitioner had failed to overcome the presumption that counsel's decision not to request an alibi instruction was sound trial strategy. *See Mason*, 2003 WL 327992 at *3-4.

This Court finds that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application thereof. Petitioner acknowledged that the co-defendant was with him on the night of the robbery and the co-defendant testified that he left her waiting in the car on a side street near the site of the robbery. Given these circumstances, it was not unreasonable for counsel to forego seeking an alibi instruction. The jury was well aware of Petitioner's defense to the charges. Further, even if counsel erred by failing to request an alibi instruction, Petitioner cannot establish that he was prejudiced by counsel's conduct given the significant evidence of guilt presented at trial, which included seized money and a weapon and two eyewitness identifications. Habeas relief is not warranted on this claim.

**V.     Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, this Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.

></br>

                          s/Marianne O. Battani
                          MARIANNE O. BATTANI
                          UNITED STATES DISTRICT JUDGE

DATE: March 20, 2006